# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DAVID SADDY,**

    **Plaintiff,**

    v.                                                                                                   Case No. 13-CV-519

**AGNESIAN HEALTH CARE,**
**DR. THOMAS GROSSMAN,**
**DR. ENRIQUE LUY,**
**MARGARET M. ANDERSON,**
**and WAUPUN MEMORIAL HOSPITAL,**

    **Defendants.**

---

# REPORT AND RECOMMENDATION

---

The plaintiff, David Saddy, is a Wisconsin state prisoner. He alleges that, while a prisoner at Racine Correctional Institution (RCI), he underwent off-site knee surgery at Waupun Memorial Hospital, and that the surgery was unsuccessful, leaving his knees misaligned. Mr. Saddy is proceeding on an Eighth Amendment deliberate indifference to a serious medical need claim. Defendant Dr. Enrique Luy, a staff doctor at RCI and the only state-employed defendant, recommended that Mr. Saddy undergo the knee surgery and allegedly failed to refer Mr. Saddy to another doctor for a second opinion after the unsuccessful knee surgery. The remaining defendants – Dr. Thomas Grossman, the surgeon who performed the surgery; Margaret M. Anderson, a nurse practitioner who allegedly misdiagnosed Mr. Saddy's knee problems after the surgery was completed; Waupun Memorial Hospital, the location of Mr. Saddy's surgery, which also allegedly employs Dr. Grossman and Ms. Anderson; and Agnesian Healthcare, a separate clinic that also

employs Dr. Grossman and Ms. Anderson, and at which Mr. Saddy was seen after his surgery – are collectively referred to as the "Agnesian defendants."

The case was assigned to United States District Judge J.P. Stadtmueller who, on December 11, 2013, referred the case to this court for the purpose of conducting an evidentiary hearing regarding the issue of exhaustion of administrative remedies. See Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008). Specifically, Judge Stadtmueller directed this court to make a report and recommendation on the following four issues:

(1) whether Wisconsin's administrative remedies procedure actually applies to the Agnesian defendants;
(2) whether any person or circumstance led Mr. Saddy to believe that Wisconsin's administrative remedies do not apply to the Agnesian defendants;
(3) whether Mr. Saddy was informed that (or whether, in fact) the fourteen-day time limit does not apply to inmate complaints regarding ongoing medical conditions; and
(4) whether any person or circumstance otherwise prevented Mr. Saddy from timely filing his inmate complaint.

(Judge Stadtmueller's Order of December 11, 2013, at 16, Docket No. 42.)

## I. Procedural Background and Evidentiary Hearing

On December 13, 2013, the court directed the parties to submit status reports by January 6, 2014. Following receipt of the status reports, on January 9, 2014, the court issued a Scheduling Order, setting a February 28, 2014, deadline for the completion of discovery and setting the evidentiary hearing for April 21, 2014. (Docket No. 60.) These dates were extended at the request of the parties after the court granted Mr. Saddy's motion to recruit counsel for the limited purpose of the evidentiary hearing and related discovery. (Docket No. 66.)

Attorneys John W. Halpin and Donald A. Daughtery agreed to represent the plaintiff pro bono for the hearing and related discovery on February 27, 2014. The parties subsequently filed a joint motion to modify the scheduling order, which the court granted. Under the revised scheduling order,

2

the discovery deadline was May 16, 2014, and evidentiary hearing was set for May 28, 2014. (Docket No. 82.)

The one-day evidentiary hearing was held on May 28, 2014. The following parties and witnesses testified. Testifying for Mr. Saddy were inmates Mario Valdez Whitney and Shaheed Taalib'din Madyun, as well as Mr. Saddy himself. Inmates Whitney and Madyun testified from their institution by video-conference. The defendant Dr. Luy called Dr. Luy, Mr. Saddy adversely, Institution Complaint Examiner Brenda LaBelle and Corrections Complaint Examiner Welcome Rose. The Agnesian defendants called Waupun Memorial Hospital Chief Operating Officer DeAnn Thurmer.

At the completion of the testimony, the court directed the defendants to submit supporting briefs by June 20, 2014. Mr. Saddy's response was due July 3, 2014, and the defendants' reply briefs were due July 14, 2014. This matter is fully briefed and the court makes the following factual findings and recommendations.

## II. Discussion

**A.     Factual Findings**

On July 30, 2012, Mr. Saddy underwent double-knee replacement surgery at Waupun Memorial Hospital. (Evid. Hr'g Tr. 102:16-20, May 28, 2014.) Dr. Grossman performed the surgery. After the surgery, Mr. Saddy was transferred to the infirmary at Dodge Correctional Institution where he stayed for about one week. (Hr'g Tr. 102:21-25.) Mr. Saddy returned to RCI on August 7, 2012. (Hr'g Tr. 103:1-3.) He suffered from severe pain consistently following the surgery. (Hr'g Tr. 107:17-23.) By September 4, 2012, Mr. Saddy thought something was wrong with his legs and that his surgery had been "botched." (Hr'g Tr. 108:2-4.)

3

On September 4, 2012, Mr. Saddy saw Ms. Anderson and she took x-rays of his legs. (Hr'g Tr. 108:5-16.) Upon review of the x-rays, Ms. Anderson reassured Mr. Saddy that the x-rays were fine, his legs were just swollen, and that there was no misalignment. Id. Ms. Anderson's Final Report indicates that Mr. Saddy was "Progressing as expected." (Exh. 16A.) Mr. Saddy took her word for it. (Hr'g Tr. 108:15-16.)

Mr. Saddy saw Dr. Luy on October 19, 2012. (Hr'g Tr. 12:10-13; 132:4-7.) Mr. Saddy was taken to the Health Services Unit waiting room in a wheelchair by inmate Madyun. (Hr'g Tr. 31:22-32:12.) Inmate Whitney was also in the waiting room at that time. (Hr'g Tr. 12:15-19.) Dr. Luy came to the waiting room to get Mr. Saddy. (Hr'g Tr. 132:9-21.) Mr. Saddy and the two inmates testified that, after Saddy expressed an interest in filing an inmate complaint against Dr. Grossman regarding the surgery, Dr. Luy told Saddy that he could not file an inmate complaint against Dr. Grossman because the doctor did not work for the Wisconsin Department of Corrections (DOC). (Hr'g Tr. 132:9-133:22; 12:13-20; 32:4-12.) On the other hand, Dr. Luy disputes that any such conversation occurred. Dr. Luy expressly denied advising Mr. Saddy that he could not file an inmate complaint against Dr. Grossman. Dr. Luy testified that he has no idea about DOC procedures and that, furthermore, he would not speak openly with a patient in a public area. (Hr'g Tr. 89:13-24; 98:20-24.) As will be seen in the ensuing discussion, it is not necessary for this court to determine which version of the waiting room conversation is more credible because, regardless of whether or not Dr. Luy informed Mr. Saddy as Saddy alleges, it is not a critical factual determination. As set forth herein, the Wisconsin Administrative Code itself – and not Dr. Luy's alleged comments – prevented Saddy from exhausting, because the Code provides no guidance to inmates filing inmate complaints against outside medical providers.

4

On October 31, 2012, Mr. Saddy saw Dr. Grossman in his office at Waupun Memorial Hospital. (Hr'g Tr. 110:21-24.) Dr. Grossman confirmed his leg was visibly off, that his gait was off, and that x-rays confirmed the problem. Id. According to Mr. Saddy, this was the first time he actually knew something was wrong with the surgery. (Hr'g Tr. 163:11-14.) Before that date, he knew his knee was visibly off and that his gait was off, but he did not know the source until Dr. Grossman confirmed with x-rays on October 31, 2012. (Hr'g Tr. 166:10-14.)

RCI has a "Chain of Command" that inmates must follow before they may file an inmate complaint. The RCI Inmate Handbook provides in relevant part:

> Inmates writing to staff must follow the chain of command below to address issues. <u>All three levels must be exhausted before writing to the warden or filing an Inmate Complaint.</u> You must start at the lowest level related to your problem before going to the next level. For Level 2 and 3, you must indicate when and to whom you have sent a request and the response received. Failure to follow this chain of command and/or sending requests to multiple staff about the same issue at the same time may result in a delay in your issue being addressed. If assistance is needed on how to address a problem, contact your unit manager for guidance.

(Exhs. 6, 105 at 31-32.) With regard to "Medical Concerns," the chain of command is: (1) HSU, (2) Assistant/HSU Manager, (3) Warden. Id.

Mr. Saddy attempted to follow RCI's chain of command beginning on November 1, 2012. On that date, he submitted a health service request form to see Dr. Luy. However, Mr. Saddy was unable to see Dr. Luy until December 5, 2012. (Hr'g Tr. 167:13-19; 120:3-8.) Dr. Luy said he could do nothing further for Mr. Saddy. (Hr'g Tr. 168:1-2.) To complete the second level, on December 3, 2012, Mr. Saddy submitted a letter to HSU Manager Sue Nygren, who responded on January 4, 2013. (Hr'g Tr. 116:5-12; 168:3-21; Exh. 15.) Among other things, Ms. Nygren indicated that it was up to Dr. Luy to send Saddy for a second opinion and that Saddy should continue to work with the

physicians. As to the third level, Mr. Saddy submitted an interview request form to the Warden but received no response. (Hr'g Tr. 117:16-24.)

Ms. Welcome Rose is a corrections complaint examiner for the DOC. She testified that institutions require that inmates allow at least five days for a response from each step of the three levels. (Hr'g Tr. 216:15-21.) Welcome Rose reviewed Mr. Saddy's inmate complaint history in preparation for her testimony at the hearing. She testified that in determining whether or not an inmate's complaint is timely, the chain of command process should be considered. (Hr'g Tr. 220:15-22.)

On December 6, 2012, Mr. Saddy filed inmate complaint RCI-12-26008 against Dr. Luy. His complaint states:

> This is a complaint against Dr. Luy for medical issues related to my knee surgery. I have had several knee surgeries while incarcerated in the Department of Corrections. The last three surgeries were done by Dr. Grossman at Waupun Memorial where inmates are not given a choice of which hospital or doctors may operate on them. On July 30, 2012 of this year I reluctantly allowed double knee replacement surgery to take place, which was done by Dr. Grossman. Post-knee surgery, we discovered that my right knee was disfigured, crooked and poorly put back together after the surgery. It took from July 30, 2012 until October 31, 2012 for Dr. Grossman to verify my right knee problem, that it was off 5 degrees, and my gait to also be off. I was constantly complaining to medical staff here at RCI, and still am about the unbearable pain that I am suffering, and the ugly swelling in my knees. I have repeatedly sought out a second opinion from a different doctor or hospital. But Dr. Luy refuses to allow me to be seen by anyone else. Here are facts that RCI medical staff must understand. (1) The facts as already told above is a reality and acknowledgment by Waupun Memorial doctors; (2) To correct the problem would require another major surgery with no guarantees to actually being able to fix my right knee problem caused by Dr. Grossman's negligent surgery procedures. (3) Even prisoners have rights to have a second opinion about medical issues one doctor has already messed up, (4) Although RCI is not responsible for the actions of Dr. Grossman, RCI is responsible for further care of me and has the responsibility to see to it that it is done responsibly by doctors who are under contract with the State and Department over the medical care of all Wisconsin prisoners. (5) Dr. Luy is aware that Dr. Grossman has messed up my knees, and that I no longer wish to be operated on by that individual whom I consider to be a negligent doctor. And, (6) if Dr. Luy continue to refuse to send me to a different doctor for a second opinion on my knees, this will cause RCI to be negligent

6

> also, and be liable for damages along with Dr. Grossman. For the record, I was never warned by anyone at Waupun Memorial Hospital, or from RCI medical staff of these kind of complications. The only warning I received was general surgery complications like Blood Clots or Anesthesia. Not Disfigurement, or a Crooked walk. Had that been the case, I never would have allowed surgery to take place on me, knowing these results or possibilities. I was assured by Dr. Grossman to have a good result to normal activities. I had no choice in medical staff, and was forced to accept Dr. Grossman's recommendation without getting a second opinion which I am still in need of to this day. I am in the process of preparing a lawsuit against Dr. Grossman and the Waupun Memorial Hospital. If RCI does not send me to a different doctor for a second opinion, or to get my knees corrected, I will be forced to include Dr. Luy and RCI medical staff in that suit too. The pain I am having on a daily basis can be prevented, and need not continue by allowing Dr. Luy to cover for Dr. Grossman. Therefore, RCI is being put on notice too about their actions in this matter. I am now filing complaint to exhaust all available remedies.

(Exh. 10.) The complaint indicates that the date of incident is "7/30/12 And Ongoing." Id. In addition, under the section of the complaint requesting the "Name(s) of people who have information about this complaint," Mr. Saddy lists Dr. Luy and Sue Nygren. Id.

On December 10, 2012, the complaint was returned to Mr. Saddy because he did not sign each page of the three-page complaint. (Exh. 11.) Mr. Saddy resubmitted the complaint which was acknowledged on December 17, 2012. (Exh. 12.)

Ms. Brenda LaBelle was the institution complaint examiner at RCI and reviewed Mr. Saddy's complaint. (Hr'g Tr. 193:13-14.) On December 19, 2012, the offender complaint was rejected by Ms. LaBelle pursuant to Wis. Admin. Code § 310.11(5)(d) because Mr. Saddy "submitted the complaint beyond 14 calendar days from the date of the occurrence giving rise to the complaint and provides no good cause for the ICE to extend the time lines." (Ex. 12.) The Rejection Comment goes on to state that, "By his own admission, the complainant had knowledge of this issue since 07-30-12. He provides no evidence to support that he followed proper chain-of-command in a timely manner, in an attempt to resolve the issue." Id. During the hearing, Ms. LaBelle reiterated her belief that the critical date in her calculation of timeliness was the date of the surgery in July; at that point,

7

the fourteen day period commenced. (Hr'g Tr. 203:20-24.) Mr. Saddy filed an appeal to the CCE on December 24, 2012. (Exh. 13.) The Reviewing Authority determined that the complaint "was appropriately rejected by the ICE in accordance with DOC 310.11(5)." (Exh. 14.)

Ms. Welcome Rose expressed a contrary view to that of Ms. LaBelle. Upon her review of the file, Ms. Rose said Mr. Saddy was basically complaining about a "botched surgery." (Hr'g Tr. 219:8-11). As such, the start of the fourteen-day period would depend on the circumstances. (Hr'g Tr. 224:13-18.) Under the attendant circumstances, in Ms. Rose's opinion, the fourteen-day period should not have commenced until October 31, which was the day Mr. Saddy received confirmation from Dr. Grossman that his knees were misaligned; this was the date of discovery for Saddy. (Hr'g Tr. 225:9-17.) Alternatively, Ms. Rose testified that Mr. Saddy's inmate complaint, RCI-12-26008, should not have been rejected as untimely because he was complaining about an ongoing medical concern. (Hr'g Tr. 211:13-24.)

In regard to the Agnesian defendants, Waupun Memorial Hospital Chief Operating Officer DeAnn Thurmer testified that the DOC has a partnership with Agnesian Healthcare to provide healthcare to incarcerated patients at the hospital. (Hr'g Tr. 234:1-3.) The DOC and Agnesian Healthcare/Waupun Memorial Hospital have a contract under which the DOC refers patients to Waupun Memorial Hospital. (Hr'g Tr. 235:3-6.) Any complaints from inmates regarding medical care rendered at the hospital are returned to the DOC institution's Health Services Unit so that they may be handled by the DOC with its procedures. (Hr'g Tr. 236:20-237:3.) The contract between the DOC and Agnesian Healthcare states in relevant part:

> 4.12 <u>Inmate Complaints</u>. PROVIDER shall inform the responsible DOC Nursing Coordinator of any complaints received from Inmates. Results of PROVIDER review will be shared with the DOC Nursing Coordinator who will work with PROVIDER to: a) assess and provide information from the DOC; (b) work with PROVIDER's Staff Practitioner to prevent the action(s)

8

> or circumstance(s) at issue from recurring; and (c) if appropriate, notify the
> claimant of the general nature of the action taken.

(Exh. 5 at 5.)

Wisconsin Administrative Code § 310.05 provides:

> **DOC 310.05 Exhaustion of administrative remedies.** Before an inmate may commence a civil action or special proceedings against any officer, employee or agent of the department in the officer's, employee's or agent's official or individual capacity for acts or omissions committed while carrying out that person's duties as an officer, employee or agent or while acting within the scope of the person's office, the inmate shall exhaust all administrative remedies that the department of corrections has promulgated by rule.

(Exh. 7.) According to Ms. Rose, inmate complaints against non-DOC employees who provide medical services are within the scope of the DOC's Inmate Compliant Review System if there is a contract between the provider and the DOC. (Hr'g Tr. 212:24-213:16.) In that case, the private provider is an agent of the DOC. (Hr'g Tr. 227:25-228:1-5.) However, an inmate would not know whether or not there is a contract. (Hr'g Tr. 224:4-6.) The Wisconsin Administrative Code Chapter 310, which is the DOC's inmate complaint procedures, does not reference outside private providers. (Hr'g Tr. 226:1-3.)

**B.    Recommendations**

This court recommends that the answers to the questions submitted by Judge Stadtmueller be as follows.

### 1.    Whether Wisconsin's administrative remedies procedure actually applies to the Agnesian defendants

Yes. The Wisconsin Administrative Code requires that before an inmate may commence a civil action against an agent of the DOC for acts or omissions committed while carrying out that person's duties as an agent or while acting within the scope of the person's office, the inmate shall exhaust all administrative remedies that the DOC has promulgated by rule. Wis. Admin. Code

9

§ DOC 310.05. Waupun Memorial Hospital/Agnesian Healthcare is an agent of the DOC because there is a contract between them. Therefore, inmates must exhaust the DOC's administrative remedies against the outside provider before filing a civil action.

2. **Whether any person or circumstance led Mr. Saddy to believe that Wisconsin's administrative remedies do not apply to the Agnesian defendants**

Yes. The attendant circumstances resulted in Mr. Saddy not knowing whether he had to file an inmate complaint against the Agnesian defendants. The Wisconsin Administrative Code does not provide any guidance to inmates regarding whether they need to file an inmate complaint against an outside medical provider. The Wisconsin Administrative Code provisions on exhaustion do not mention outside medical providers. Although Ms. Rose testified that the DOC's administrative procedures apply to the Agnesian defendants because of the contract and therefore Agnesian Healthcare is an agent of the DOC as set forth in § DOC 301.05, Ms. Rose also testified that inmates would not know whether there was a contract. Accordingly, Mr. Saddy was provided with no information which would have advised him that the Agnesian defendants were subject to Wisconsin's administrative remedies.

3. **Whether Mr. Saddy was informed that (or whether, in fact) the fourteen-day time limit does not apply to inmate complaints regarding ongoing medical conditions**

Mr. Saddy's inmate complaint is directed against Dr. Luy and his claim against Dr. Luy includes an ongoing medical condition. According to the inmate complaint, Dr. Luy failed to refer Mr. Saddy to another medical provider for a second opinion and failed to treat his continuing pain. Ms. Rose testified that the fourteen-day time limit to file an inmate complaint does not apply to ongoing medical conditions. She testifed that Mr. Saddy's ongoing medical condition is pain.

However, as set forth below, even if the fourteen-day time limit did apply to Mr. Saddy's claim against Dr. Luy, the inmate complaint was timely filed.

### 4. Whether any person or circumstance otherwise prevented Mr. Saddy from timely filing his inmate complaint

The court recommends that for purposes of exhaustion, the date of occurrence of the incident is the date that Mr. Saddy discovered that his surgery was unsuccessful, October 31, 2012. The next day, Mr. Saddy commenced RCI's chain of command by writing to Dr. Luy in the HSU. He was unable to see Dr. Luy until December 5, 2012. On December 3, 2012, Mr. Saddy commenced the second level by writing to HSU Manager Sue Nygren, who responded on January 4, 2013. Mr. Saddy submitted an interview request form to the Warden to satisfy the third level, but received no response.

Mr. Saddy filed RCI-12-26008 on December 6, 2012. According to Ms. Welcome Rose, time spent completing the chain of command should be factored into the fourteen-day time limit for exhaustion. If the chain of command is considered, this court recommends that Mr. Saddy's inmate complaint be considered as timely filed because it was filed within a day or two of the date of the completion of the chain of command, which was commenced promptly. In the alternative, if the chain of command is not considered, this court recommends that the court determine that Mr. Saddy was prevented from timely filing his inmate complaint by the chain of command requirements set forth in the RCI Inmate Handbook which were applicable to Mr. Saddy.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(2) whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation. Objections are to be filed in accordance with the

11

Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 11th day of August, 2014.

BY THE COURT:

s/ Aaron E. Goodstein
AARON E. GOODSTEIN
United States Magistrate Judge